Whenever you're ready, good afternoon, and may it please the court. My name is Hannah Garland, and I'm a third year law student at the University of Washington, appearing on behalf of Appellant Cole Spencer. I would like to reserve three minutes for my colleague Miss Fitzmaurice on rebuttal, and I will try to keep track of time. All right, I'll try to help you out by keeping an eye on the clock yourself, too. Thank you, Your Honor. On March 21st, 2018, Officers Pew and Rozema violently beat and severely injured Cole Spencer, an unarmed passenger in a routine traffic stop. This is not disputed. The body camera footage shows that once Spencer was on the ground, Officers Pew and Rozema continued to brutalize him. Starting only 36 seconds into Video B, which footage, the following violence against Spencer can be seen occurring. Rozema knees Spencer in the back, before then punching him in the stomach while Pew holds down his arms. Pew then slams Spencer's face into the ground at least four times, strikes him in the face with his knee at least twice, chokes him to unconsciousness, and grinds his face into the gravel. The angle of Deputy Macklin's body camera footage indicates that he is either sitting or lying on Spencer at this time. One thing that seemed hard to discern from the videotape was what point exactly the handcuffs were placed on both arms. What does the record show as to that point, and where in the sequence of strikes from the officers does that event fall? So, Spencer is handcuffed at about 46 seconds into Video D. And it takes about four seconds. You can hear on the tape that they're saying, clasp it, clasp it, referring to the video, referring to the handcuffs. And then after that point, you can see on video, on Video D, that his handcuffs are cuffed behind his back. And then, so, and what occurs after that point that you challenge as excessive of the things that you've said? Yes. So, after that point, Officer Pew kneels on his back for at least a minute while Deputy Macklin is still also physically restraining him. So, did the strikes by Pew of his head into the ground occur before or after the handcuffs were on? That occurred before he was handcuffed. Are there any cases that squarely say that law enforcement can't use that type of force when a suspect is still resisting? So, first, I just want to address the question of resistance. And so, we would contend that movement is different than resistance. And it is a dispute of fact whether Spencer was actually resisting during the point where they were assaulting him and taking the facts in the light most favorable to Spencer, which we must do at this point. Well, but the relevant fact under Hernandez is not what Spencer had in his head, whether he thought of himself as resisting. It's whether what a reasonable officer would see would interpret as resistance. Now, it could be that no reasonable officer would have interpreted that as resistance or the actions revealed. But you just said they couldn't get the handcuffs on at the point that some of this earlier violence occurred. And he's clearly resisting in the objective sense. He is making it difficult. Let's put it that way. His actions are making it difficult to put the handcuffs on. That looks like objective resistance. If that's happening, an officer gets to use force in order to get the hands behind and the handcuffs on. So, explain to me why, from an objective point of view that way, you have a triable issue. Yes. So, we do believe that a reasonable jury could view the video camera footage and believe that Spencer was unable to comply and was not choosing not to comply. And as you said, there is the chance that the reasonable officers may have believed that was resistance. Nonetheless, once Spencer was handcuffed and laying prone on the ground, Pew still drove his knee into his back for over a minute. So, even if the jury finds there was resistance during that initial interaction, Spencer was not resisting. He was still in prone on the ground while Pew drove his knee into his back. So, what would be the clearly established authority that would say that you can't have your knee on the back of someone after their handcuff? Yes. We are relying on the law in the county of Riverside for that. But in Lalonde, I mean, the officers were putting enough pressure that, you know, there was a reaction. Do you have that here? Yes. In the medical records, it shows that Spencer fractured two parts of his spine, in addition to other injuries, including fractures to his nasal bone, his septum, and his left eye socket. So, I believe that you're right. Part of the holding in Lalonde relied on the occurrence of serious injury that, unlike in Cortes Luna, was not just said, I had a headache or I had back pain. But here, there are medical records, and he also was rushed into emergency surgery because of this incident. So, I do feel... So, if we were to remand this case, then at what point would you say is the turning point? We'll trial counts on both sides. What issues are factual disputes to be tried before a jury, and which ones you've conceded? So, is that turning point at the 46 seconds video D part, when he's on the ground, but before the handcuffing, or is it at some point prior to that? Thank you. It is unquestionable that that line was crossed at that 46 second point when they then on his back after he was handcuffed. However, there's also substantial evidence that a reasonable jury could find to conclude that they used excessive force right from the beginning of this incident when Officer Rosema wrenched Spencer's arm behind his back. And part of the reason that it's so hard to find that line is because it is a fact-dependent inquiry. And we believe that that's... But there's no dispute. Is there from the record, or can there be any reasonable dispute that there was some resistance to the handcuffing in the beginning? Just pulling away, even taking his version, right? He did pull away from the officer who was trying to handcuff him. I'm sorry. I'm not sure which part you're talking about when he is already on the ground. Well, okay. You're saying that if we were to remand, it's an entire reversal that the whole case goes to the jury from the moment that they attempted to handcuff him on. Am I correct in your position? Yes, you are correct to that. We believe the jury should have the opportunity to hear all of those facts and decide in disputes of facts using the grim analysis. We feel very strongly that... On this record, can there be any reasonable dispute that he initially resisted at the point when the officer was trying to handcuff him, even by his own version, he pulled away, right? As he said, to create some space or distance. That is correct. So how can it be from the beginning? I'm trying to figure out. If you've got your ideal, it can't be from the very beginning, right? Because there's got to be some concession that there was initial resistance. So at what point do you get to go back and put this case before the jury? And if it's not the beginning, give me an alternative point. Thank you. So the reason we do think it could be the beginning is because resistance itself is not necessarily dispositive in the grim analysis. And so even conceding that, yes, there was initial resistance, such as there was in the land, excessive force was still found when they looked at the totality of the circumstances and saw that force was used beyond what was reasonable to effectuate an arrest. And we believe that's the same situation here, where even if we concede that there was an initial resistance when Officer Rosema tried to handcuff Spencer, the use of force escalated in such a way that even from that point, it may be found to be excessive using that analysis. I do see I'm coming up short on time. Are there other questions or may I reserve? All right. Thank you. We're down to less than a minute, but I'll put on the clock. Thank you, Your Honor. I'll leave it comes back up. The two minutes. All right. You're splitting time. Ms. Critch, you're taking two minutes and reserving the remaining eight for Mr. Linvall. Is that right? Yes, Your Honor. Good afternoon, judges. My name is Anna Critch, and I represent the Maricopa County Sheriff's deputies, Schall and Macklin. Mr. Linvall here represents the Mesa police officers. I begin by saying I believe the deputy's briefing does a very clear job explaining why the district court's ruling should be affirmed as to Schall and Macklin. But beyond that, I will say that Appellant Spencer doesn't argue that the Sheriff's deputy's actions constituted excessive force in their own right, and he does not even analyze their conduct under the gram factors. Moreover, qualified immunity protects Schall and Macklin in this instance. It was Spencer's burden, but he can't point to a single case that says officers can be held liable for using reasonable force to respond to de-escalate a fight between law enforcement and a resisting suspect. Well, the way you've said it, you've viewed the facts in the light most favorable to the officers instead of the other way around. Your Honor, I don't believe it can be meaningfully disputed that Mr. Spencer was resisting during this interaction. He pled guilty to aggravated assault to an officer during this interaction, a felony. He also admitted in his original opening brief no fewer than on three occasions that he was resisting. He admitted it on page 11, and then again on 13, and then again on page 17. So I don't think it's a disputed fact that he was resisting. But beyond that, Spencer relies on the integral participation doctrine to find liability for Schall and Macklin, but there he does not show how Schall and Macklin's conduct rises to the level of fundamental involvement under Ninth Circuit precedent. And here I ask the Court to consider the practical implications. What would Spencer want Schall and Macklin to do in this situation? They cannot respond to a roadside scuffle involving law enforcement without being treated as armed backup and integral participants. So they must either drive by and leave law enforcement in need of aid and just keep driving, or stop, but before they respond, engage in a hindsight-focused analysis. Who struck the first blow? Were any acts of excessive force committed prior to us arriving? For what crime are you investigating this man? It's simply not the standard, and it is the precise type of hindsight analysis the Supreme Court warns against, frequently imposing on officers who, in their daily work, are engaged in tense, uncertain, and rapidly evolving situations. If you have no more questions for me, I yield my remaining time, and I thank you. Thank you, Counsel. Good afternoon, and may it please the Court. My name is Alex Lindvall, and I represent the City of Mesa Police Officers, in this case, Officers Pugh and Rozema. My primary concern today is to make sure I address any lingering questions the panel might have, and because my time is so limited, I invite you to interrupt me with questions, and please let me know if there's a specific area or issue that you'd like me to focus on. With that being said, I want to emphasize that there are no genuine issues of material fact in this case. The plaintiff, while he was, and to use his own words, out of it on meth and hallucinogenic drugs, physically fought three police officers and resisted arrest for roughly three and a half minutes to avoid being arrested for a serious felony. This is all undisputed. I agree with the answer to the episode the handcuffs were placed on. She gave a very precise answer that it's 46 seconds into video D. Do you have a different view of that or not? It's difficult to tell. I think that you can, at that 46-second mark, I think it's fair to say that at least one clasp was on the plaintiff's wrist, but they were also administering leg shackles, and they were still trying to get it onto another wrist. It's difficult to tell from the video exactly when the handcuffs came on, but I don't think it precisely matters exactly when those handcuffs came on, because the plaintiff was resisting arrest for the entirety of the sale. It makes a big, once someone has two handcuffs on their back, they're a lot less dangerous, and the level of force that can be used is going to, that could permissibly use, goes down. That seems to be an important issue. I wanted to get very clearly your position on what the record shows a reasonable trier of fact could find as to when the handcuffs were on both hands. Understood, and I agree that that is an important turning point in this interaction, but I think for the purposes of this appeal and where we're at in the procedural posture of this case, I'm okay with this court assuming that the handcuffs were on the plaintiff at that 46-second mark. I'm not sure, like the 46-second mark, I don't think that's 46 seconds into the entire encounter. It's just where that was on a particular video. This is minutes into a long, prolonged physical fight. It's not 46 seconds out of the three and a half minutes. Your position is not earlier than that, but it might have been later than it got on, but... Correct. Okay. So, if that's the case, couldn't a reasonable jury, looking from the 46-second and video D on, find that the officer's use of force beyond that was excessive? He was lying on the ground. He was restrained. He wasn't armed. He was immobilized. So, why doesn't that get to the jury? Well, two reasons. One, I don't think a jury could find that that's excessive because he was still actively... I mean, I understand that once you're in handcuffs, it's much harder to offer extreme resistance or to physically fight an officer, but he was still squirming around, wiggling, trying to get up. He was out of it on drugs. I'm not sure if he was trying to run away or anything. The officers were just trying to keep him in a spot where they could actually wrangle him. So, I don't think that's going to amount to excessive force under anything, but more importantly, I don't see any clearly established law that would say that what the officers did there was unreasonable. And if there's no clearly established law, then there's no reason to give this case to a jury at all. Well, what about... What's your response to their argument that after the handcuffs are on, Pew has his knee on the back for more than a minute and causes injury from that? And Lalonde says that knee on the back to such a degree as to cause injury is bad. Why isn't Lalonde squarely controlling? Yeah. I think describing the holding of Lalonde in that way describes it at a much too high level of generality. I think we need to look at the specific facts of Lalonde and see if they are on all fours with this case, and I think they're clearly not. I went through in my briefing details, so I won't belabor the point, but I just did it real quick. One, the suspect in Lalonde was rational and sober. The plaintiff in this case was out of it on drugs. Second, the suspect in Lalonde was not resisting when the officers used force here to the plaintiff was actively resisting for a prolonged period of time. Third, the suspect in Lalonde was suspected of only a minor crime, while the plaintiff in this case was being arrested for aggravated assault. Four, the seizure in Lalonde took place in the suspect's home, but the seizure in this case took place during a traffic stop, which are especially fraught with danger for police officers. And it's important to remember that in this case, once the plaintiff started this altercation, the officers had to turn their back to the driver of the vehicle that they were there, and they didn't know if this person, they knew that this driver of the vehicle had a criminal record, an arrest warrant, and they planned on arresting him during this, but they had to divert their attention to the plaintiff, who was essentially going berserk on the side of the road, and the fact that there was someone behind him that could have been on drugs, could have been armed, could have been engaged. But once Schall is there and Schall's at the door, then that's not a factor anymore. Correct. Correct. Yeah, I agree with that. And that the force was administered beyond that, right? Subsequent to Deputy Schall's arrival and guarding of the driver? Yes, that's correct. It's just before those sheriff's deputies got there, the circumstances were a little more dire because they couldn't see the driver. Let me ask you about some of the specific acts of violence, because before the point at which he's handcuffed, they're entitled under the law to use a substantial amount of force to bring him into compliance for arrest, and that includes getting him handcuffed. The force necessary to get him handcuffed is going to be reasonable. But some of the uses of force don't seem to have any relationship to accomplishing the task of getting him in handcuffs. How does taking his head and smashing it into the ground four times succeed in advancing getting him into handcuffs? I don't understand that. Right. Well, the officers didn't just start out with the significant uses of force like this. They were starting out slow. They tried to arrest him with the normal means, and they slowly escalated their force, but they're escalating that as a force. I don't think it was slow. That was pretty fast escalation. I mean, it's a three and a half minutes. That might not sound like a particularly long period of time when you just read it on paper, but three and a half minutes when you're actively wrestling a run-and-muck drug abuser is an eternity. So, I mean, they didn't just start with bashing his head into the ground. They tried a taser. They tried a few fist strikes. They tried a few other things, but this didn't seem to have any effect. Let me ask you a question about the taser because what he's saying is that there are triable questions of fact here because the taser is actually causing the involuntary movement. Wouldn't a trained officer know that and account for that? No. I don't believe that's a genuinely disputed issue. In this case, you can clearly see in the video that he's getting up to his feet with officers on top of him. He's actively resisting arrest. He gets up to his knees. He almost gets on his feet at one point. He's not doing weird involuntary actions that you would expect to see from a taser. He was actively resisting in this case, and he was fueled by meth and DMT. Every single piece of evidence in this case points to the conclusion that he was actively resisting and that these normal pain compliance techniques were having no effect on him. Going back to Judge Collins' questions about smashing his head on the ground, when that happened, you had Officer Macklin or Deputy Macklin on top of him. He couldn't move. You had two other officers, and you look at the video, they're very big guys, very strong guys. Was it really necessary to bash his head on the ground there? Again, this is not a situation that's one-on-one officer or even two-on-one. There's three guys, including one who was sitting on top of him. Yeah, I understand. That's maybe a fair critique if you're sitting in the comfort of a judge's chambers, but in the moment, the officers were in a very chaotic, very stressful, very time-sensitive, tense, and certain rapidly evolving situation. Maybe, maybe not. Maybe he shouldn't have bonked his head. Maybe it was appropriate in the circumstance, but I'd like to just end really quickly, if I may. Right now, I'm over time, but I'd like to end with a quote, if that's okay, that I think is really appropriate for this case. Go ahead and fully answer the question. Yeah, and this quote is, I think, a good answer to the question. We are generally loathed to second-guess officers' actions in a dangerous situation by analyzing each act without looking at the entire event and considering the officer's mindset amid the uncertainty and chaos. We should not scrutinize an officer's every minor move in a frantic and chaotic situation as if we were examining the Zapruder film in slow motion. And that's from Hyde v. City of Wilcox from last year. I think that is an appropriate quote for how to analyze this case. You can go through and maybe look, oh, look at markers 33 through 44. They did this, this, and this. Maybe that's a force. Maybe it's not. But that's kind of missing the bigger picture here. These officers were tasked with wrangling a frenzied drug abuser. This is a prototypical nightmare scenario for the police. And this court should give them considerable leeway. All right. Thank you, counsel, for your argument. Thank you, your honors. My name is H.R. Fitzmaurice. And I'm here on behalf of Cole Spencer. Excuse me. First, I'd like to reiterate that there are disputes of fact in this case. In fact, whether or not Spencer was on drugs is actually disputed. Spencer has been consistent from the beginning that he was not on drugs. Secondly, I'd like to say Lalonde does squarely govern this case. There is clearly, there's a clear factual analogy between the two. Can I go back on that first one? What does the record show about what the officers said that they believed at the time of the incident about whether or not he was on drugs? Yes. In Officer Pugh's opening or his report, he states that he believes that Spencer was either on drugs or that he was planning on resisting or that he was planning on running or that he was objectively has evidence that Spencer is on drugs. So there was nothing in the contemporaneous record that would objectively reveal the use of drugs or... Not from the facts in the light most favorable to Mr. Spencer. Okay. So as I was saying, Lalonde does squarely govern this case. Mr. Spencer was unarmed. Lalonde was unarmed. There was never even a question of whether he was armed. Lalonde initially resisted. He admitted to initially resisting. And as we've discussed, it's hard to dispute that initial resistance was a factor, but the court ruled after he was subdued and handcuffed that kneeling on his back in such a way that could cause and did cause significant injury was a violation of his First Amendment rights. We have the same situation here. Kneeling on somebody's back and neck for over a minute is clearly established to be a constitutional violation and it did cause severe injury. And if there are no further questions, I will rest, but I'm happy to answer any questions you very helpful arguments today. The matter is submitted. And thank you. Thank you. NUW Law Clinic for taking this case for bono. We appreciate it.
judges: NGUYEN, COLLINS, LEE